UNDER SEAL

FILED
CLERK, U.S. DISTRICT COURT
9/16/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___eva___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TAREK GREISS,<br><br>    Defendant. | No. 8:20-cr-00131-MWF<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 220(a)(2): Illegal Remunerations for Referrals to Clinical Treatment Facilities; 18 U.S.C. § 982(a)(7): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   Defendant TAREK GREISS operated a purported non-profit corporation and substance abuse treatment facility located in Costa Mesa, California ("Company A").

2.  Defendant GREISS also operated another corporation and substance abuse treatment facility affiliated with Company A and located in Costa Mesa, California ("Company B").

3.  SeKe, Inc. ("SeKe") was a corporation located in Tustin, California, that referred individuals to substance abuse treatment facilities, including Company A and Company B, in return for monetary kickbacks.

4.  Co-conspirator 1 and Co-conspirator 2 were "patient brokers" who worked for SeKe.

5.  "Detox" referred to the specialized and reimbursable medical care of a patient whose dependence on drugs was so severe that the abrupt discontinuation of or decrease in drug use could have led to dangerous withdrawal symptoms.

6.  Detox and substance abuse treatment facilities were "clinical treatment facilities," as defined in Title 18, United States Code, Section 220(e)(2), and were regulated under state and federal law.

7.  Company A and Company B serviced patient populations that received health care benefits through, among other entities, Cigna, Aetna, Beacon, Blue Cross Blue Shield of Ohio and Illinois, United Healthcare, UBH Rios, and Highmark of Pennsylvania (the "insurance companies").  The insurance companies were "health care benefit programs," as defined in Title 18, United States Code, Section 24(b), and Title 18, United States Code, Section 220(e)(3).

B.  OBJECT OF THE CONSPIRACY

8.  Beginning no later than on or about November 6, 2018, and continuing to at least on or about April 3, 2019, in Orange County, within the Central District of California, and elsewhere, defendant

2

1  GREISS conspired with Co-conspirator 1 and others known and unknown
2  to the Grand Jury to knowingly and intentionally commit an offense
3  against the United States, namely, Illegal Remunerations for
4  Referrals to Clinical Treatment Facilities, in violation of Title 18,
5  United States Code, Sections 220(a)(1),(2).

6  C.   MANNER AND MEANS OF THE CONSPIRACY
7       9.   The object of the conspiracy was to be accomplished, in
8  substance, as follows:
9            a.   Defendant GREISS, on behalf of Company A, would enter
10 into a sham contract with SeKe that: (1) required fixed, monthly
11 payments from Company A to SeKe; (2) purportedly prohibited payments
12 from Company A to SeKe based on the "volume or value" of SeKe's
13 patient referrals; and (3) was designed to conceal the nature of the
14 kickback payments following the passage of the federal Eliminating
15 Kickbacks in Recovery Act of 2018.
16           b.   Defendant GREISS would pay tens of thousands of
17 dollars in kickbacks to SeKe on a monthly basis, which payments were
18 intended to induce referrals of individuals to Company A and
19 Company B and as compensation in exchange for individuals using the
20 services of Company A and Company B.
21           c.   Company A and Company B would bill and subsequently be
22 reimbursed by the insurance companies for drug treatment purportedly
23 given to admitted patients that SeKe had referred in exchange for the
24 payment of kickbacks by defendant GREISS.  Specifically, Company A
25 and Company B billed approximately $1,574,780 to the insurance
26 companies, and were collectively paid approximately $357,762.
27
28

D.  OVERT ACTS

10.  In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendant GREISS, and others known and unknown to the Grand Jury, committed various overt acts in Orange County, within the Central District of California, and elsewhere, including, but not limited to, at least one of the following:

Overt Act No. 1:  On or about November 6, 2018, during a phone conversation, defendant GREISS discussed with Co-conspirator 1 the need for a "fixed agreement" in light of new laws prohibiting payments for patient referrals.

Overt Act No. 2:  In or around November or December 2018, defendant GREISS entered into a purported "Marketing Services Agreement" on behalf of Company A, which agreement: had been signed by Co-conspirator 2, on behalf of SeKe; had an "effective date" of October 1, 2018, shortly before the Eliminating Kickbacks in Recovery Act of 2018 became effective; required monthly payments of $30,000 from Company A to SeKe; and included a false provision that prohibited these payments from being based on the "volume or value" of any referrals provided by SeKe.

Overt Act No. 3:  On or about January 2, 2019, defendant GREISS transferred approximately $15,000 in kickbacks from Company A's Bank of America checking account to SeKe to induce referrals of individuals to Company A and Company B.

Overt Act No. 4:  On or about January 15, 2019, defendant GREISS transferred approximately $15,000 in kickbacks from Company A's Bank of America checking account to SeKe to induce referrals of individuals to Company A and Company B.

<u>Overt Act No. 5:</u>   On or about February 1, 2019, defendant GREISS transferred approximately $15,000 in kickbacks from Company A's Bank of America checking account to SeKe to induce referrals of individuals to Company A and Company B.

<u>Overt Act No. 6:</u>   On or about February 15, 2019, defendant GREISS transferred approximately $15,000 in kickbacks from Company A's Bank of America checking account to SeKe to induce referrals of individuals to Company A and Company B.

<u>Overt Act No. 7:</u>   On or about March 1, 2019, defendant GREISS transferred approximately $15,000 in kickbacks from Company A's Bank of America checking account to SeKe to induce referrals of individuals to Company A and Company B.

<u>Overt Act No. 8:</u>   On or about March 15, 2019, defendant GREISS transferred approximately $15,000 in kickbacks from Company A's Bank of America checking account to SeKe to induce referrals of individuals to Company A and Company B.

<u>Overt Act No. 9:</u>   On or about March 18, 2019, during a telephone conversation, defendant GREISS discussed with Co-conspirator 1, who, unbeknownst to defendant GREISS, was then cooperating with law enforcement, the monetary value of approximately 19 individuals referred to Company A and Company B by SeKe -- which values were based on the kinds of reimbursable drug treatment the individuals were eligible for and received -- and credited those values against the payments previously made to SeKe under the Marketing Services Agreement.

<u>Overt Act No. 10:</u>   On or about April 3, 2019, during a telephone conversation, defendant GREISS told Co-conspirator 1 that defendant GREISS "was hungry for admissions," that he was low on

detox-eligible patients, and that he would "rather get admissions" than be paid back the money that defendant GREISS had previously transferred to SeKe for patient referrals.

COUNTS TWO THROUGH SEVEN

[18 U.S.C. §§ 220(a)(2), 2(b)]

11.  The Grand Jury realleges paragraphs 1 through 7 and 9 through 10 of this Indictment here.

12.  On or about the dates set forth below, in Orange County, within the Central District of California, and elsewhere, defendant GREISS knowingly and willfully offered to pay, paid, and caused to be offered and paid remuneration, including a kickback, bribe, and rebate, namely, the following payments, directly and indirectly, overtly and covertly, in cash and in kind, (1) to induce a referral of an individual to a clinical treatment facility with respect to services covered by a health care benefit program, and (2) in exchange for an individual using the services of a clinical treatment facility with respect to services covered by a health care benefit program, each in and affecting interstate and foreign commerce:

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|---|---|---|---|
| TWO | 1/2/19 | Electronic Transfer from Company A's Bank of America checking account to SeKe. | $15,000 |
| THREE | 1/15/19 | Electronic Transfer from Company A's Bank of America checking account to SeKe. | $15,000 |
| FOUR | 2/1/19 | Electronic Transfer from Company A's Bank of America checking account to SeKe. | $15,000 |
| FIVE | 2/15/19 | Electronic Transfer from Company A's Bank of America checking account to SeKe. | $15,000 |
| SIX | 3/1/19 | Electronic Transfer from Company A's Bank of America checking account to SeKe. | $15,000 |

| | | | |
|---|---|---|---|
| SEVEN | 3/15/19 | Electronic Transfer from Company A's Bank of America checking account to SeKe. | $15,000 |

FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(7)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant TAREK GREISS ("Defendant") that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(7), in the event of Defendant's conviction under any of Counts One through Seven of this Indictment.

2.   Defendant shall forfeit to the United States the following property:

   a.   all right, title and interest in any and all property, real or personal, constituting, or derived from, any gross proceeds obtained, directly or indirectly, as a result of any offense set forth in any of Counts One through Seven of this Indictment including, without limitation, approximately $176,548.00 in U.S. currency seized by law enforcement officers during the execution of a search warrant on or about July 26, 2019, in Costa Mesa, California; and

   b.   a sum of money equal to the total value of the property described in subparagraph a above.

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), Defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of Defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

NICOLA T. HANNA
United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

JENNIFER L. WAIER
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office

DANIEL S. LIM
Assistant United States Attorney
Santa Ana Branch Office

DANIEL KAHN
Acting Chief, Fraud Section
United States Department of Justice

CLAIRE YAN
Trial Attorney, Fraud Section
United States Department of Justice